Court is in session. The next cases for today are 20-30382 consolidated with 20-30379 Stephen Douglas et al versus Nippon Yusen Kabushiki Kaisha. You may proceed Mr. Peck. Robert Peck, may it please the court, here for the appellant. This court has continuously held that jurisdiction, personal jurisdiction under Rule 4k2 requires satisfaction of a national contact rule which in turn satisfies due process. It first articulated this test in 1996 in World Tanker. It continued to use that test in two subversive system and system pipe. It articulated the formulation that is most frequently used in Adams in 2004. And then more recently in both Patterson and Nagravision in 2018, this court recognized and approved and signed approvingly the Adams formula and stated that that formula, which is this, that Rule 4k2 provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state. In Patterson, the 11 temporary employees that had been submitted as those national contacts were insufficient to satisfy that standard. In Nagravision, Gotek, the defendant, had, quote, contacts with the United States taken as a whole that are sufficient to satisfy due process concerns. We asked for the same evaluation here. We're not asking for anything different than this court has always held as appropriate under 4k2. This is a straightforward application of established and controlling precedent. Nothing in the law has changed either within the circuit or by the Supreme Court with respect to the personal jurisdiction requirements of 4k2. So it is the defendant who is asking for something extraordinary here when it asks that an at-home test be superimposed on top of Rule 4k2. And yet even in its statement of the issue in its brief, it says the sole dispute here is whether NYK line has sufficient contacts with the United States to satisfy a fifth amendment due process. To the extent people read Patterson as having an at-home test because of the the Daimler citation, what would you say to that? Well, first of all, I think that's over-dicta. It was not necessary to the result. Patterson Court had already concluded that you could not satisfy 4k2. Now, the plaintiff in that case did not argue that 4k2 involves general jurisdiction so that there was no issue. So as a fallback default position, they said, well, even general jurisdiction is not satisfied because no one is at home. And so that is why Patterson does not impose a mandatory requirement of that home over 4k2. And if it did, it would make 4k2 nullity. It would not apply in any instance at all because any time a defendant is at home somewhere in the United States, it will be subject to the general constitutional in all respects. I don't think the Patterson Court did that. It certainly didn't do that knowingly. And the fact that Niagara Vision two years later did not impose an at-home requirement suggests that Patterson did not hold that. Certainly Wright and Miller cites Patterson for the Adams propositions, not for an at-home requirement. So the problem here is the district court did superimpose an at-home requirement and misread Patterson's required ignoring subsequent cases that did not. And as I said, there is no way that 4k2 can operate if there's also a requirement that defendant be at home in the United States. It will always be in some jurisdiction. And under normal specific jurisdiction types of analysis, every state court would have jurisdiction over an incident that leads to the litigation that occurs within the United States. So that also does not. Now I think you need to go over the context to persuade us that this case is more like Adams than Patterson or not really. Well, I could explain that this is definitely not like Patterson in terms of there were only 11 temporary employees for a six-month period as in Patterson. Instead, here we have a century-long presence in the United States where the headquarters originally was established in New York with bank accounts in the United States. You have shipments at U.S. ports. You have air carriers within the United States. And not even going to the subsidiaries that are wholly owned by NYK line that have even more substantial contacts with the United States. There are sufficient here and certainly more than would have existed even in the Adams analysis. Now we have to follow Adams regardless of what the other circuits are doing. But are we out of step with the other circuits? I do not believe so. I think that most of the circuits continue to look at 4K2 as Adams does. There are several circuits that have talked about at home. But for example, the Seventh Circuit has a confusing set of two decisions made on the same day by the same panel in which one of them does talk about only a national contacts rule and the other one uses an at-home describer in it. And it is very hard to say where the Seventh Circuit stands as a result of that. And in Lindenet in the D.C. Circuit, there is clear evidence that the court considered this not to be a federal cause of action. So therefore, it did not really meet what was required for 4K2. And at the same time said, but if this was a matter of international law, which admiralty always is, then there would be different considerations. And I believe that that left the court open, as it cited the Republic of Argentina case, to consider an Adams approach for an admiralty case. Does it matter that we received a 28-J that tells us there's litigation going on in Japan? Those involved different combinations of parties and does not have any effect here and certainly does not have any bearing on the personal jurisdiction issue before this court. Mr. Peck, is there any scholarship, any sort of academic literature supporting your position that you're aware of? I'm not aware of a great deal of academic literature on this, on either side of this. But what we do have is the amicus brief by civil procedures professors that confirm the approach taken in Adams is the correct approach for 4K2. And as I said also, Wright and Miller, two of the authors are members of that amicus brief, does say that Patterson stands for the proposition that a national context rule satisfies due process. So if we look at Adams as indeed the binding and controlling precedent in this court, we need not go further. But the fact that this is an admiralty case, I think puts another thumb on the scale in our favor. Admiralty goes out of its way to show that it has concerns for the welfare of seamen, the injured parties in here. And at the same time, we have decisions by this court as well as the US Supreme Court that recognize that there are different considerations under admiralty because it is a unique area of law that depends on custom history. In fact, that history informs the due process analysis in such a way that confirms the fact that we entertained in American courts, disputes between collisions of ships at sea, in which no one was an American, going back to the founding of this country, suggests that indeed, this kind of customary international law is recognized and that there is no surprise or lack of notice to the Japanese defendant here that they might be hailed into the US court, as this court has also recognized just national context is sufficient for that purpose as well. In addition, I would submit that the Supreme Court just last year, and I'm going to get the pronunciation of this wrong, but the third case indicated that even foreign parties have a lesser due process right within the United States than those who are domiciled here. And so as a result, the considerations that sometimes inform 14th Amendment due process are not present here. Counsel, I believe the 10th circuit has said that even if a defendant has sufficient nationwide contacts, a plaintiff must additionally justify its jurisdiction in a particular state. In the PA versus Bell South case, does due process under the Fifth Amendment require some analysis where the jurisdiction is inconvenient in a particular state, or do we just ignore the particular state aspect? Well, you know, the particular state aspect makes a difference when you're talking about a federal cause of action that can be tried in state courts, or that when there's diversity jurisdiction, when you borrow this long arm statute in state. And so therefore, that's true. But the Fifth Amendment due process requirement here is simply that of international share, minimum contacts, and consistency with the traditions of fair play and substantial justice. And those are satisfied by a significant enough context with the United States as a whole. There has been no decision that says that that is not enough. And indeed, this rule, Rule 4K2, was designed and written at the invitation of the Supreme Court to fill that gap when state long arm statutes could not extend the reach sufficiently when a federal cause of action was at stake. The court chose not to make that rule by decisional law. It invited the rules committees and Congress to promulgate such a rule. The rule was promulgated by that process, the Rules Enabling Act process. And as a result, we have endorsement by the rules committee, the judicial conference, the Supreme Court, and Congress. So the idea that- So vis-a-vis the states, vis-a-vis the defendant, it could be brought in any state as long as it has some minimum national contact. Is that the test? The test is it brought in any district court, not in any state. That's what I'm saying. Any district. And that is exactly what- Any state in the country. And that is what Adams held, and that is true of every federal statute that gives nationwide service of process. Because service of process is the sine qua non of personal jurisdiction. And that also explains partially why we have tagged jurisdiction as well, because tagged jurisdiction is neither general jurisdiction for specific jurisdiction. But the fact of the matter is that because you are giving service of process, you will have the right to assert personal jurisdiction, the same is true in REM cases. Did you want to address at all the district court? I mean, you may have something else that you want to address. Well, one thing I want to return to the point about the national contacts is that the district court suggested that there were sufficient systematic and continuous contacts in the United States to satisfy the Adams test, but thought that because it had to impose an at-home analysis as well, that's the only reason personal jurisdiction did not exist. So just to return to your previous question, I believe we satisfied the prima facie case that we were required to meet. If there are no further questions, I'll reserve the rest of my time for rebuttal. Thank you, counsel. Okay, Mr. Matheson. I think you're muted, Mr. Matheson. Well, you were. Can you hear me now, your honor? Yes. Thank you. Good afternoon, your honors. May it please the court. My name is Eric Matheson, along with Robert Murphy and Peter Tompkins, Thomas Canaveri, and Cody King. We represent the defendant and the appellant, Nipon Yusin, Kabushiki Kaisha, referred herein as NYK Line. On appeal, your honor, is the district court's decision of NYK Line's pre-answer motion to dismiss the claims for lack of personal jurisdiction, and the district court correctly held that NYK Line is not subject to general jurisdiction in the courts of the United States. The district court also recognized that the plaintiffs only invoked general personal jurisdiction, and that the standard by which NYK Lines do process rights are measured under the Fifth Amendment is the at-home standard applied by the United States Supreme Court and this court when analyzing general personal jurisdiction. Plaintiffs on appeal are no longer arguing, as they did in the district court, that NYK Line is at home in the United States, and the undisputed facts established by the complaints and NYK Line's Higurashi Declaration incontrovertibly established that NYK Line's home is in Tokyo, Japan. The jurisdictional analysis conducted by the district court was straightforward. None of the acts or omissions giving rise to the claim occurred in the United States, and accordingly, specific jurisdiction was not alleged nor analyzed by the district court. Plaintiffs' appellants have repeated the purposeful availment language, which does relate to specific jurisdiction in their arguments, but that language is irrelevant here. Only general jurisdiction was invoked below, and the district court only analyzed that branch of personal jurisdiction. Do you concede that there are continuous and systematic contacts, even if you do not concede the at-home, which I understand why you don't concede at-home. Do you concede systematic and continuous contacts? NYK Line has systematic and continuous contacts with the United States, Your Honor. This court, by its decision, has reiterated- Why is that enough under Adams? It's not enough, Your Honor, because the Fifth Circuit case law and the Supreme Court case law has consistently held that the Fifth and Fourteenth Amendment tests for due process are the same test. The difference is only, under the Fourteenth Amendment, the court looks to the contacts within the state, the geographic limitation of that court's power, and for a federal court,  the state's power to hold. The due process test as it stands today, and iterated by the Supreme Court in Goodyear, Domler, and BNSF, and by this court in its decision in Patterson, is that in order to obtain general personal jurisdiction over the defendant, that defendant must be at home in the United States. How do you distinguish Adams? Well, Adams predates Goodyear and Domler, Your Honor, and it was applying the test at that time for due process. One of the cases cited by the plaintiff appellants, along with Adams, is this court's earlier decision in submersible systems. Like Adams, the court at that time recognized that the Fifth and Fourteenth Amendment standards were the same and applied them. This court has not applied a different standard as between the Fifth and Fourteenth Amendment. The difference between Adams and the current situation, Your Honor, is that the Supreme Court's intervening case law has made clear that a defendant's due process right is governed by an at-home analysis, and that is what- The difference with that is that normally if that happens and then we have to change our case law, we then write an opinion that says there was a clear statement, not just a hint that the Supreme Court had changed its case law, and therefore we have to overrule or not use our prior binding case law in the circuit. We normally have some- there's usually an opinion that- and Patterson is rather breezy on this point at the end, and it doesn't seem like it's trying to overrule Adams and say that it's no longer good law. Really, can you help us on that? Your Honor, I think the important language in Patterson is that Patterson is dealing with a 4K2 scenario, the same as we are here, and Patterson is dealing with a defendant's due process rights, and in doing that, the court in Patterson was quite clear that it was because the defendant was not at home in the United States that general personal jurisdiction could be found. The court in Patterson also noted in, I believe it's footnote seven of the opinion, that it recognized that Adams and other cases predated the Supreme Court's intervening precedent in Goodyear and Daimler, and so Patterson recognizes that the due process standard applicable has changed. Adams and submersible systems are correct inasmuch as they acknowledge the test is the same between the 5th and 14th Amendment, and in fact, Patterson cites Adams, and that only substantiates, Your Honor, that the 5th Circuit has never held that the standard between the 5th and 14th Amendment differs, and in fact- What about the post-Patterson case law? Well, Your Honor, the case law after Patterson, there are district courts within this circuit, as Judge Afric pointed out below, that have applied Patterson as the standard to 4K2, and- I'm talking about the case that was cited by opposing counsel. Its name's escaping me, that Agra something, and I apologize that it's escaping me, and I didn't take good enough notes. The Nagravesan-Gotek case, Your Honor? That case involved an appeal of a default judgment against a party, and the issue of general personal jurisdiction was not at issue in that case, and the holding there does nothing to alter Patterson's finding that in a 4K2 scenario with general personal jurisdiction, it is the at-home test that controls. Wouldn't 4K2 be rendered a nullity if at-home is required across the board? Because if you're at home, then you already have places that you can be sued. So what's the point of 4K2? Well, I think there's two aspects to answer that question, Your Honor. The first is, to be clear, 4K2 is a procedural rule, so it does not create substantive law. And within 4K2, 4K2b expressly provides a constitutionality requirement. Now, with respect to the argument that the at-home test renders the rule a nullity, it's important to remember that the Supreme Court, in defining what the at-home test says and does, is it looks to the place of incorporation or the principal place of business, or in the alternative, a situation giving rise to exceptional circumstances. Now, there are district courts within this circuit that have found general personal jurisdiction under 4K2 applying the at-home test. The district decision in Ogden is an example of that, where the district court concluded, notwithstanding that there had been no demonstration that the company was at home there by virtue of its contacts. And this goes back, Your Honor, to the idea that under an exceptional circumstance, the court is analyzing the nature and substance of the contacts to determine whether those contacts are the type of contacts that indicate that the corporate entity is at home in the subject jurisdiction. Has that answered Your Honor's question? I think it's a good effort. Thank you. Thank you. Yes, you've answered it. Yes. It's just troubling, because is it true that your client sues in the United States frequently? And isn't there something fundamentally unfair? And does it matter? Perhaps the law isn't always fair, but isn't there something fundamentally unfair about letting your client sue all the time in the United States, and then saying, oh, it cannot be sued here? Your Honor, with respect to that issue, I think it's important to remember that there's a fundamental difference between the permissive jurisdiction of the courts of the United States and compelling a foreign party to appear here. NYK Line, for example, has a bill of lading, Forum Selection Clause. They have chosen a forum in the United States that's a convenient place to litigate certain types of disputes. But that is very different from being compelled to appear in a court in the United States for an incident that occurred in Japanese territorial waters. NYK Line is subject to specific jurisdiction for those things that it does in the United States and that impact in the United States. But the concept of general jurisdiction is very different. And to subject NYK Line to jurisdiction would subject it to being sued in the United States for any claim, no matter where it arose in the world. And that is a substantial difference. And the ability to use the courts and the breadth of which the courts will accept plaintiffs voluntarily and defendants voluntarily coming into the court is very different than compelling a party to appear in the courts. NYK Why shouldn't the Fifth and the 14th Amendment tests be different? Because the 14th Amendment test is trying to recognize federalism interest, and the Fifth Amendment test doesn't need to recognize federalism interest. NYK That is true, Your Honor. As the district court, as the appellate court for the District of Columbia pointed out, due process is not just about federalism. And the rights of a defendant to due process should not vary as between the Fifth and 14th Amendment. The plaintiff's election to bring a claim under state law or federal law and to choose its forum should not control the contour of a defendant's due process rights. And the primary inquiry in looking to personal jurisdiction is the defendant's right. So the omega problem hasn't been solved. I'm sorry, Your Honor, the which problem? The case that was the progeny of the rule, the rule that brought forth the rule, not the progeny, but the parent of the rule. Omni, Your Honor. Yes. Omni, I'm sorry, I called it omega. I should have my notes. So, Your Honor, I think that if we look at what the rule actually says, it quite clearly does address the gap that was identified in Omni. But the gap that was identified in Omni was not a jurisdictional gap. The gap identified in Omni was a gap having to do with service of process where a defendant was already subject to the jurisdiction of the courts of the United States, but was not capable of being served. And so 4K2 provided a procedural vehicle for service. But 4K2b makes quite clear that there remain constitutional limitations, as the committee note pointed out at the time of the adoption of the rule. And accordingly, the due process test under the 5th and 14th Amendment is not affected by the resort to rule 4K2. Contrary to what the plaintiff appellants have asserted, there is no third branch of jurisdiction outside of specific or general or a new jurisdictional grant that comes about by virtue of Rule 4K2. It is a procedural rule. And accordingly, the defendant's due process rights remain subject to the 5th Amendment. And what the 5th Amendment forbids, Rule 4K2 cannot authorize. Doesn't your reading of the 5th and the 14th Amendment due process standards as being the same cause some problems with the jurisdictional grants and the number of federal statutes like RICO statute and the Clayton Act? Defendants appellants position on those statutes, Your Honor, is first and foremost plaintiff appellants never raise those below, Your Honor. But we can raise that question, can't we? With Yes, you can, Your Honor. And with respect to those statutes, the basis of jurisdiction under those statutes is not the same type of jurisdiction that we're dealing with here. Those statutes are related to acts that have specific effects in the United States somewhere. They are not statutes that confer general jurisdiction over any of those defendants. Each of the statutes cited by the plaintiffs relate to conferring jurisdiction for a specific or a mission, but not general jurisdiction for any act, any emission, any contract or anything else that they could be sued for in the United States courts. And we we deal in this case, Your Honor, with only general jurisdiction. And it bears reemphasis that the analysis of general jurisdiction is important, particularly with respect to a defendant's due process rights, because in finding general jurisdiction, that defendant is subject to any and all claims in the United States, no matter where they would arise. The circuit courts of appeals that have similarly faced the question of whether the at-home analysis applies with equal force to the 4th, 14th, and 5th Amendment have uniformly held that it does. Those courts that have addressed 4K2 since Daimler have also held that the at-home test applies. This court in Patterson applied 4K2 and the at-home analysis. And the district court citing the scholarship of the D.C. Circuit Court of Appeals explained that no court has ever held the 5th and 14th Amendment due process tests for general jurisdiction are different, only the relevant scope of contacts. Since Goodyear, Daimler, and BNSF were handed down, several courts like this court in the instant appeal have faced questions of whether to reduce or eliminate a corporate defendant's due process rights so as to compel it to appear under a theory of general jurisdiction where the entity is not at home. Those cases reflect a uniform rejection of a diminished standard of due process. NYK line's due process rights do not vary according to the claims asserted, nor do issues of federalism have any bearing on those rights. As the district court correctly held, it was constrained by Supreme Court and 5th Circuit precedent from the exercise of jurisdiction over NYK line. That decision should be affirmed and under a faithful application of the 5th Amendment, NYK line's due process rights must be honored. Thank you, your honors. May it please the court. My friend started out by saying that the plaintiffs here only invoked general personal jurisdiction. I'd like to point out that paragraph 20 of the amended complaint asserts jurisdiction under 4K2. The second paragraph of the brief in opposition to the motion to dismiss argues sufficient U.S. contacts to satisfy 4K2. The entire first section of that brief is an argument about why 4K2 jurisdiction exists and why the at-home analysis for general jurisdiction does not apply. And of course, the district court did indeed address that. So the only way that the statement my friend makes is accurate is if he conflates general jurisdiction with rule 4K jurisdiction. And that is part of the problem. He mentions the world has changed because of Goodyear, Daimler, and BNSF. Goodyear was a case in state court, North Carolina court, trying to adjudicate an incident that happened in France. Daimler was not a federal cause of action. And as a result, the federal district court in Daimler utilized the California wrong arm statute, which is, of course, subject to the kind of analysis that the court has adopted in Bristol-Myers and other cases like that and Daimler here. And BNSF was a case that started in Montana state court. So again, none of those affect a federal statute being litigated in federal court. And while in some respects, the 14th and 5th Amendment are the same because both utilize the international shoe test of making sure that there are minimum contacts and we follow the traditions of fair play and substantial justice. My friend admitted that the difference really is about the scope of contacts that are necessary to satisfy due process. And when you have a due process, when we're talking about procedural due process here, when you have a procedure that gives you the sufficient contacts and notice that you are then satisfying due process and 4K2 does that as does the Interim Pleader Act, which doesn't fit into the description of distinctions that my friend gives as to why federal statutes don't cause any difficulty for his analysis. But the fact of the matter is, in their brief, they identified only one instance where they thought 4K2 could apply. That was the Perkins case in 1952. That involved a Filipino company that during World War II relocated to Ohio, established its headquarters there. When they were sued in Ohio State Court, the court said, well, of course, general jurisdiction applies there. And so, of course, they were subject to the state court jurisdiction. So, in other words, it is not an example of how 4K2 might apply and it does not answer the question of when it would apply given this analysis. So, given what you've just said, does that mean that Daimler could not be intervening Supreme Court law, which would alter whether Adams is controlling? Yes, Daimler cannot be. It did not address a situation dealing with federal court. The Supreme Court has made clear in Bristol Liars that they are reserving the issue for the scope of personal jurisdiction in federal court to another day. That's a subsequent decision. And, in fact, in McCastro, another case of the plurality decision, recognized that Congress has the authority to extend personal jurisdiction in ways that state courts can't. As I said, Goodyear was brought in a North Carolina state court, was brought under North Carolina law. So, for the same reason Goodyear can't be intervening Supreme Court law between Adams? That's right. Yes, because, you know, none of these cases evaluated 4K2, which existed at the time, which has been consistently recognized as requiring a minimum national context rule to satisfy due process, as this court said in Adams. And I want to make one further point, and that is that this court has recognized repeatedly as a jurisdiction that adheres to many admiralty cases, that admiralty jurisdiction is distinctive. And we're not arguing that subject matter jurisdiction because of the admiralty. But the fact of the matter is we are dealing with international customary law where people and foreign entities expect that if there is a- Quick question. Quick question, if our presiding judge will allow me. Aside from the admiralty context of this case, for what other reason should we not be persuaded by the DC Circuit's opinion and LibNet? Because, again, they also acknowledged that international contexts are different because they did not have any arguments to the extent that they adopted the at-home provision. It, too, is dicta because it was not argued otherwise by the plaintiff there. And so they were not presented with the possible consequences of a decision that superimposes at home over 4K2. Thank you, counsel. We have your argument. We appreciate both counsel's arguments today, and we appreciate you appearing by Zoom so we could get this taken care of expeditiously and hear from both of you. This case is submitted.